# Matthew's License.

⌐ 213     269
. f213     279

*Liquor law—Petition—Omission of names of surety—Bond.*

Where a bond in proper form is attached to and filed with a petition for a liquor license which is regular in all respects, except that the space left for the names of the proposed sureties is not filled in, the defect is not substantial, and will not defeat the application.

In such a case an amendment of the petition by inserting therein the names of the sureties, is not only unnecessary, but improper in view of the fact that it would introduce into the petition other facts than those stated therein when the jurat and certificate were made.

MESTREZAT and POTTER, JJ., dissent.

Argued Oct. 11, 1905. Appeal, No. 143, Oct. T., 1905, by Benjamin H. Matthew, from judgment of Superior Court, April T., 1905, No. 262, reversing order of Q. S. Somerset Co., Feb. T., 1905, refusing a liquor license In re Application for Retail Liquor License of Benjamin H. Matthew. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Appeal from Superior Court.

The petition, certificate and bond filed in the court of quarter sessions were as follows :

" This petition respectfully represents that your petitioner is a citizen of the United States, of good moral character and temperate habits, and desires to keep a Hotel, Inn or Tavern, and prays your Honorable Court to grant him a license under the laws of this commonwealth, to sell liquors in quantities not exceeding one quart.

" Your petitioner further represents :

"1. That his name is Benjamin H. Matthew and that his present residence is Rockwood Boro., Somerset county, Pennsylvania, and that he has resided there for more than one year last past.

"2. The particular place for which license is desired is the ' Haines House ' situate on the south-east corner at the intersection of Main and Market streets, Rockwood Boro., Somerset county, Pennsylvania.

"3. That your petitioner was born in Hazleton, Preston county, West Virginia, A. D. 1881.

"4. The names of the owners of the premises where said business is to be conducted are Fred W. Biesecker and J. A. Berkey.

"5. That the place to be licensed is necessary for the accommodation of the public, and is suitable as well as necessary for the entertainment of strangers and travelers ; that he has for their exclusive use at least twenty-three bed-rooms and twenty-three beds.

"6. That your petitioner is not in any manner interested in the profits of the business conducted at any other place in said county, where any of said liquors are sold or kept for sale.

" 7. That your petitioner is the only person in any manner pecuniarily interested in the business so asked to be licensed, and that no other person shall be in any manner pecuniarily interested therein during the continuance of said license.

" 8. Your petitioner has not had a license for the sale of liquor in this Commonwealth revoked during any portion of the year preceding this application.

" 9. The names of the persons who will be his sureties on the bond which is by law required are (1) ———— (2) ——————— who are reputable freeholders of Somerset county, Pennsylvania, where the said liquors are to be sold; and your applicant further sets forth that each of the said sureties is a bona fide owner of real estate in the said county, worth over and above all encumbrances, the sum of $2,000, and that it would sell for that much at public sale, and that neither of said sureties is engaged in the manufacture of vinous, spirituous, malt or brewed liquors.

" BENJAMIN H. MATTHEW,
" Petitioner.

STATE OF PENNSYLVANIA, }
  COUNTY OF SOMERSET. } ss.:

" Before me, a Justice of the Peace, personally came Benjamin H. Matthew, aforesaid, and being duly ———— according to law, saith that the statements in the foregoing petition are true.

Affirmed and subscribed before me, this 16th day of January, A. D. 1905.

" B. H. MATTHEW.

" DAVID GILDNER, J. P.
" My Commission expires First Monday of May, 1905."

" CERTIFICATE IN SUPPORT OF PETITION.

" We, the undersigned, reputable qualified electors of the Borough of Rockwood, County of Somerset, State of Penn'a, hereby certify that we have been acquainted with the foregoing petitioner for license, viz : Benjamin H. Matthew, that we have good reason to believe that each and all statements in the foregoing petition are true, and therefore pray that the prayer of

said petitioner may be granted and that the license prayed for may issue."

(Signed by 21 citizens.)

## " BOND.

" KNOW ALL MEN BY THESE PRESENTS,

" That we, Benjamin H. Matthew principal, and (1) H. S. Swarner, (2) A. C. Sterner, sureties, are held and firmly bound unto the Commonwealth of Pennsylvania, in the penal sum of Two Thousand Dollars, lawful money of the United States of America, to be paid to the said Commonwealth, her certain attorney or assigns, to which payment well and truly to be made, we and each of us, do bind ourselves, and each of us, our and each of our heirs, executors and administrators, firmly by these presents. Sealed with our seals, and dated the 14th day of January in the year of our Lord one thousand nine hundred and five.

" Now the condition of this obligation is such, that if the above bounden Benjamin H. Matthew, principal, and (1) —— (2) —— shall faithfully observe all the laws of the Commonwealth of Pennsylvania relating to the selling or furnishing of vinous, spirituous, malt or brewed liquors, or any admixture thereof, and shall pay all damages which may be recovered in any action which may be instituted against us under the provisions of any Act of Assembly, and shall pay all costs, fines and penalties which may be imposed upon us under any indictment for violating the act of May 13, 1887, and supplements, entitled ' An act to restrain and regulate the sale of vinous, and spirituous, malt or brewed liquors, or any admixture thereof,' or any other Act of Assembly relating to selling or furnishing liquors as aforesaid, then this obligation shall be void and of no effect, or else shall be and remain in full force and virtue.

" And further, we do by these presents empower the District Attorney of Somerset County or any other attorney of any Court of Record of the Commonwealth of Pennsylvania, to appear for us therein and confess judgment against us for the said penal sum, with costs of suit and release of all errors, and do hereby waive the right of inquisition on real estate, and all

laws exempting real or personal property from levy and sale on execution.

"B. H. MATTHEW,   [Seal.]
"H. S. SWARNER,   [Seal.]
"A. C. STERNER,   [Seal.]
"Sealed and delivered in the presence of
"DAVID GILDNER."

STATE OF PENNSYLVANIA, } ss.:
  COUNTY OF SOMERSET.

"Before me a Justice of the Peace personally came H. S. Swarner one of the sureties on the foregoing Bond, who, being duly qualified according to law, deposes and says that he is the bona fide owner of real estate in the said county, worth over and above all encumbrances the sum of Two Thousand Dollars and that it would sell for that amount at public sale.

"H. S. SWARNER.

"Affirmed and subscribed before me this 14th day of January, 1905.

"DAVID GILDNER, J. P."

STATE OF PENNSYLVANIA, } ss.:
  COUNTY OF SOMERSET.

"Before me, a Justice of the Peace personally came A. C. Sterner one of the sureties on the foregoing Bond, who, being duly qualified according to law, deposes and says that he is the bona fide owner of real estate in the said county, worth over and above all encumbrances the sum of Two Thousand Dollars, and that it would sell for that amount at public sale.

"A. C. STERNER.

"Affirmed and subscribed before me, this 14th day of January, 1905.

"DAVID GILDNER, J. P."

The court of quarter sessions made an order refusing the petition. The Superior Court reversed this order.

*Error assigned* was the judgment of the Superior Court.

*W. H. Ruppel,* with him *A. H. Coffroth* and *J. C. Lowry,* for appellant.—The amendment should not have been allowed:

VOL. CCXIII—18

Porter's License, 4 Kulp, 356 ; Heery's License, 4 Kulp, 57 ; Grant's License, 2 Pa. C. C. Rep. 87 ; Faulkner's License, 2 Pa. C. C. Rep. 86 ; Donmoyer's License, 9 Pa. C. C. Rep. 303 ; Sherry's License, 12 Pa. C. C. Rep. 129 ; Mercersburg Licenses, 5 Pa. Dist. Rep. 171 ; Bailey's License, 5 Pa. Dist. Rep. 172 ; Miller's License, 13 Pa. Superior Ct. 272 ; Forst's License, 23 Pa. Superior Ct. 600 ; Walsh's License, 24 Pa. Superior Ct. 87.

The lower court's action in granting or refusing a license and permitting or refusing an amendment, in the absence of clear abuse of legal discretion, is not reversible by the appellate court: Reed's Appeal, 114 Pa. 452 ; Raudenbusch's Petition, 120 Pa. 328 ; Nordstrom's Petition, 127 Pa. 542 ; Sparrow's Petition, 138 Pa. 116 ; Gross's License, 1 Pa. Superior Ct. 640 ; Kilgore & Co's. License, 13 Pa. Superior Ct. 543.

*J. A. Berkey*, for appellee.—The petition in itself, as a matter of law, is sufficient. It contains every requirement of the fifth section of the act of May 13, 1887, and its supplements save the formal matter of writing the names of the two sureties within its own lines : Branch's License, 164 Pa. 427 ; Miller's License, 13 Pa. Superior Ct. 272 ; Brewing Co's. License, 14 Pa. Superior Ct. 188 ; Beates v. Retallick, 23 Pa. 288 ; Com. v. Silcox, 161 Pa. 484.

OPINION BY MR. JUSTICE STEWART, January 2, 1906 :

In refusing the amendment asked for the court below was entirely right, but for another and quite different reason than that given in the opinion filed by the presiding judge.

Conceding the power of the court to allow a proper and adequate amendment, under the facts presented, the amendment proposed fell short of these conditions. What was asked for was leave to amend by inserting in the original petition the names of the sureties who were expected to join in the required bond.

The inadequacy of the offer is apparent when it is considered, that being made, the averment that each of the sureties "is a bona fide owner of real estate in said county, worth over and above all incumbrances the sum of $2,000 ; that it would sell for that much at public sale, and that the applicant is not

engaged in the manufacture of vinous, spiritous, malt or brewed liquors," would stand unverified by the affidavit of petitioner, since, while this statement appeared in the original petition, the names of the sureties not being given, it was without meaning and had no place in the jurat of the applicant. Not only so, but for like reason, the certificate of the twelve reputable, qualified electors, "that they have reason to believe that each and all the statements contained in the petition are true," would be lacking as well, no such statement of fact appearing in the petition when they certified thereto.

The effect of the proposed amendment being to introduce in the petition other facts than those stated therein, when the jurat and certificate were made, the impropriety of allowing such change need not be discussed.

The case turns on whether any amendment was necessary, or, in other words, whether the application as made was sufficient. In his opinion filed the learned judge says: "We would permit this amendment and grant the license if we believed we had the power to do so." His conclusion that he had not the power rests entirely upon the omission of the names of the sureties from the petition, notwithstanding the fact that the applicant, in the judgment of the court, had complied with every requirement of the law, with the single exception referred to. The language of the court admits of no other meaning. The applicant then had satisfied the court, and in the way pointed out by the statute, that he was free from all legal disability in this connection; that the place to be licensed was necessary for the accommodation of the public, and that the sureties on his bond were sufficient.

The inquiry here is : Did the omission of the names of the sureties from the petition in any way defeat or interfere with the purpose of the statute ? If it did, such omission would necessarily be fatal to the proceeding.

The purpose of the several requirements as to what shall appear in the petition for a license to sell intoxicating liquors, is not the same as to each. Some are manifestly intended to acquaint the public with certain facts with respect to the pending application in advance of the hearing. The publication of these is required to be made in two newspapers to be designated by the court. The fact that publication of the names of

the sureties is not required suggests that the chief, if not the only, purpose in requiring the names of the sureties to appear in the petition was to aid the court in finally passing upon the adequacy of the bond that is necessary in all cases, since it is expressly provided that the license shall not issue until the applicant shall have executed a bond in the penal sum of $2,000, with two sufficient sureties to be approved by the court. With the names of the sureties appearing, and their sufficiency attested by the oath of the applicant, and the certificate of the required number of reputable electors, in the absence of anything to excite doubt or suspicion or contest, the court ordinarily can feel satisfied in approving the bond without inquiring further.

The importance of such requirement, in aid of the court, will be readily understood by those whose duty it is to pass upon such questions. If it be said that the sufficiency of the bond being proper matter for exception, as much as any other fact set out in the petition, the requirement in this particular can be none the less for public information, the answer is, it may be, but, that information was not to be gained by publication, but by inspection of the papers filed. The law must so contemplate, otherwise it would have required publication of the names of the sureties.

Now an inspection of the papers filed in this case could not have failed to disclose the names of the sureties. The bond was filed with the application, perfected by the signatures of the sureties. Under such circumstances how can it be said that any essential requirement of the statute was omitted?

It results that the omission of the names of the sureties from the petition, under the peculiar facts in this case, was not a substantial defect and, therefore, ought not to have defeated the application.

The appeal is therefore dismissed, and for the reasons above stated.

The order of the Superior Court is affirmed.


MESTREZAT, J., dissenting:

It will be observed that the majority of the court agrees with the court of quarter sessions in refusing the application for an amendment of the petition for the license, and thereby reverses

the judgment of the Superior Court on that question. This result accords with all the prior decisions of this court, and of the well-considered cases of the quarter sessions throughout the state.

This court, however, affirms the judgment of the Superior Court on the ground that no amendment of the petition was necessary, and that the application in its incomplete form was sufficient to warrant the quarter sessions in granting the license. In other words, the majority of the court holds that a license may be granted on a petition which omits the averment of some of the facts which the statute declares it " shall contain." This position of the court, in my judgment, cannot be sustained, either on principle or by precedent. It is at variance with the settled practice of every license court of the state. It also violates that provision of sec. 13 of the act of March 21, 1806, 1 Purd. 77, which provides that " in all cases where . . . . anything is directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued."

The Act of May 13, 1887, P. L. 108, 1 Purd. 1226, requires the applicant to file a petition and the facts which it shall contain are required by section five to be set out in ten separate and distinct paragraphs. The section provides in its ninth paragraph, inter alia, as follows: " Said petition shall contain . . . . Ninth. The names of no less than two reputable freeholders of the county where the liquor is to be sold, who will be his, her or their sureties on the bond which is required, and a statement that each of said sureties is a bona fide owner of real estate in said county worth, over and above all incumbrances, the sum of two thousand dollars, and that it would sell for that much at public sale, and that he is not engaged in the manufacture of spirituous, vinous, malt or brewed liquors." The petition presented to the quarter sessions to obtain this license omitted to state the names of two reputable freeholders of the county who would become sureties on the bond which the licensee is required to give. The effect of this omission, as correctly held by the majority of the court, was to leave out of the petition all the facts which the ninth paragraph of section five declares it shall contain. Ten days after the day fixed by rule of court for the hearing of the applica-

tion, the applicant asked leave to amend his petition " by writing therein in paragraph nine, the names of his sureties, to wit: H. S. Swarner and A. C. Sterner." This was refused by the quarter sessions and its action is approved by this court. But this court holds that the license should have been granted on the petition as it was filed, notwithstanding it failed to set forth the facts required by the ninth paragraph of section five of the act of 1887. It will be observed that it is the positive mandate of the statute that the names of the bondsmen and the other facts stated in paragraph nine shall be set forth in the petition. These are facts which the statute imperatively requires the applicant to include in his petition. They are, therefore, jurisdictional facts and their omission from the petition is fatal to the application. If an applicant may neglect or refuse to include in his petition the facts required by the ninth paragraph of the fifth section of the act, he may omit any other facts which the statute requires he shall state in order to confer authority on the quarter sessions to grant the license. So far as it affects the question here involved, it is wholly immaterial what purpose actuated the legislature in requiring the names of the bondsmen and the other facts mentioned in the paragraph to be inserted in the petition. It would not be difficult to show, if necessary, that it is a wise provision and that there are abundant reasons why they should be included in the petition. But it is sufficient to say that the law which authorizes the court to grant the license—and in the absence of a statutory provision no license can be granted in this state—requires the applicant to file a petition, and positively and unequivocally says that " said petition shall contain " the facts set out in paragraph nine of section five of the act of 1887.

I regard this decision of the court as most unfortunate. It strikes down the plain requirements of the statute which the legislature, in obedience to the sentiment of the state, enacted, as its title shows, " to restrain and regulate the sale " of intoxicating liquors. Step by step the people of the commonwealth, through their representatives, have imposed greater restrictions upon the sale of liquors, and the settled policy of the state, as shown by the legislative enactments upon the subject, has ever been " to restrain " the liquor traffic. The present law is the most stringent legislation enacted since we became a

commonwealth.    Recognizing the unquestioned evils of intem-
perance and desiring to abate them, as far as possible, the act
provides certain specific and stringent regulations, deemed nec-
essary to carry out the purpose in view, with which the appli-
cant must comply before he can be authorized by the court to en-
gage in the traffic.    It also imposes severe penalties upon those
who sell or furnish liquors contrary to its provisions.    In the
face of this legislation and its obvious purpose, this court by
its decision annuls the imperative command of the statute and
thereby defeats the clearly expressed will of the people of the
commonwealth.    This is not judicial interpretation; it is the
assumption by the court of legislative authority which has been
conferred by the constitution solely upon another and co-ordi-
nate branch of the government.    It in effect repeals one of
the most wholesome provisions of a statute ordained for the
purpose of regulating a traffic which, uncontrolled, is subver-
sive of the morals of the people and endangers the peace and
good order of the commonwealth.

I would reverse the judgment of the Superior Court, and
affirm the order of the court of quarter sessions refusing to
grant the license.

I join in this dissent.  POTTER, J.